**Clarence J. WEAHKEE**

v.

**Lowell L. PERRY, Individually and as Chairman of the Equal Employment Opportunity Commission, Appellant.**

**No. 77–1340.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 9, 1978.
Decided Sept. 26, 1978.

Ramon V. Gomez, Atty., Equal Employment Opportunity Commission, Washington, D. C., with whom Beatrice Rosenberg, Asst. Gen. Counsel, Equal Employment Opportunity Commission, Washington, D. C., was on the brief, for appellant.

Michael D. Hausfeld, Washington, D. C., with whom Jerry S. Cohen, Washington, D. C., was on the brief, for appellee.

Herbert E. Milstein, Washington, D. C., also entered an appearance for appellee.

Before ROBINSON, MacKINNON and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

This is an employment discrimination case brought by Clarence Weahkee against his employer, the Equal Employment Opportunity Commission (EEOC). Weahkee, an American Indian, alleges that he was denied a promotion, disciplined, and ultimately discharged as a result of racial discrimination by the EEOC in violation of Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e–16 (Supp. V 1975). Weahkee prevailed on a motion for summary judgment in the District Court and the EEOC appeals. Because we think the District Court applied the wrong standard of review of the administrative record,

and because we believe that there were genuine issues as to material facts precluding summary judgment, we reverse.

I.

As evidenced by the joint appendix of almost 900 pages the saga of Weahkee's troubles with the EEOC is long and involved, but important to an understanding of the case as presented to the District Court.

## A. EVENTS LEADING TO DISCHARGE

In 1968, in an effort to develop a racially balanced workforce for the then newly opened Albuquerque District Office of the EEOC, the District Director, Tom Robles, approached Weahkee and encouraged him to come with EEOC. When the EEOC headquarters offered Weahkee a GS–9 rating he refused it. Robles intervened and helped Weahkee secure a GS–11 rating. Weahkee accepted and became a GS–11 Equal Employment Officer working primarily as a complaint investigator. In December 1971 he was promoted to a GS–12 position in the Technical Analysis Writers Unit. Near the end of 1972 this unit was converted to a Special Projects-Investigations Unit and shortly thereafter Weahkee began having the difficulties that are the subject of this lawsuit.

In January 1973 the employees in the Special Projects-Investigations Unit were notified of a production requirement of four cases per month. Weahkee, as the senior investigator in the unit, received the more difficult cases and after eight months he had completed an average of only two cases per month. *See* J.A. 247. On October 23, 1973 Weahkee's supervisor, Frank Iske, notified him that a pay increase within his grade, GS–12, for which he would soon be eligible, would be withheld unless the quantity and quality of his work improved. Weahkee failed to increase his production in 1973 and finished the year with an average of 1⅙ cases per month. Accordingly he did not receive the within grade pay increase for which he was eligible on December 23, 1973.

During this same year, Weahkee applied for a transfer and a promotion. In June 1973 he requested a transfer to a vacant GS–12 position in the conciliation unit. Although he was among the five employees eligible for this position, the District Director, Robles, selected another individual, Nep Sanchez, to fill the vacancy. In September Weahkee applied for the GS–13 position as supervisor of the conciliation unit. Weahkee was rated the lowest of the eight eligible candidates; the selectee, Salvador DelValle, was a GS–13 supervisor from the EEOC Los Angeles District Office. The promotion evaluation summary prepared by EEOC headquarters in Washington, D.C. reveals the following ranking of personnel eligible for this position:

| Name | Overall Evaluation | Action |
|---|---|---|
| Fank L. Iske | 100 | Not selected |
| Nep C. Sanchez | 97 | Not selected |
| Arthur D. Ortega | 97 | Declined |
| Joseph P. Doherty | 97 | Declined |
| Salvador DelValle | 90 | Selected |
| Andrew Lopez | 90 | Not selected |
| Pat A. Trujillo | 90 | Not selected |
| Clarence J. Weahkee | 87 | Not selected |

In late 1973 and early 1974 Weahkee also had some disagreements with his supervisor, Iske.[1] During the investigation of some complicated cases, Weahkee would spend as much as two days in interviewing a potential witness, and then would request the witness to prepare an affidavit relating the substance of their conversation. Apparently believing this method of obtaining affidavits was inefficient, Iske instructed him to prepare affidavits for witnesses to sign at the time of the interview. Weahkee refused, taking the position that this was improper in cases in which the witness or the company management insisted that witnesses write their own affidavits. The record is unclear as to whether any such demands had ever been made of Weahkee.

---

1. Another supervisor, Mr. Andrew Lopez, who substituted for Iske for six weeks, was also involved in the events leading to the suspension.

*See* J.A. 875–78. Further, on February 4, 1974 Iske told him to expedite investigation of two cases which had been delayed and which were the subject of congressional inquiries. *See* J.A. 49–50. Although he was told to have them completed by the end of the month, he did nothing about them because Iske had previously given him other "priority" cases. Weahkee contended that it was "difficult for [him] to discern which priority case [he was] supposed to do first." As a result of Weahkee's failure to follow instructions on preparing affidavits and his failure to do anything about the investigations he had been told to complete, he was suspended for ten days without pay by the District Director, Robles. This occurred in May 1974.

Weahkee's annual performance evaluation was due in the spring of each year. Anticipating that Weahkee's performance could result in an unsatisfactory rating, Iske notified him that unless he improved both the quality and quantity of his investigations as well as his attitude toward supervision within the final 90 days of the evaluation period, he would receive an unsatisfactory evaluation. Thereafter Weahkee received such a rating for the year ending April 16, 1974.

Finally, on July 22, 1974, Weahkee received a notice of proposed discharge. The notice was cancelled and superseded on December 16, 1974 by a second notice, which cited as grounds for his removal Weahkee's failure to conduct investigations of acceptable quality in four cases, failure to participate in the training of lower level employees, and an unsatisfactory attitude toward supervision.[2] Weahkee was discharged on March 17, 1975.

**B. ADMINISTRATIVE INVESTIGATIONS AND REVIEW**

Three administrative investigations and reports are important to this appeal: the report of the EEO investigator assigned to investigate Weahkee's administrative complaint of discrimination, the report of the EEOC's Performance Rating Panel which upheld Weahkee's unsatisfactory performance evaluation, and the report of the Civil Service Commission's (CSC) Federal Employee Appeals Authority (FEAA) reversing Weahkee's discharge and ordering him reinstated.

1. *EEO Investigator's Report.* On February 15, 1974 Weahkee filed an administrative complaint of discrimination against the EEOC. The complaint alleged that the denial of the transfer to the GS–12 position in the conciliation unit, the denial of the promotion to GS–13 supervisor in the conciliation unit, the withholding of the within grade pay increase, the 10-day suspension[3] and other acts[4] were in retaliation for Weahkee's previous complaints of discrimination.[5] Weahkee charged that Robles and Iske, together with other highranking EEOC officials had discriminated against him because he was an American Indian. The complaint was referred to Doris E. McGruder, an "Equal Opportunity Specialist", for investigation.

In a five-page report issued in July 1974, the investigator summarized the facts as she perceived them to be relevant to the complaint. As a part of the general background the investigator stated that production provided the basis for employee appraisals which in turn formed the basis for decision on promotion, transfer, and within grade increases. She stated that the EEOC

---

2. The second notice was identical to the first except that an additional reason cited in the first notice—failure to meet the required four-case per month production standard—was not included in the second notice. *Compare* J.A. 44–48 *with* J.A. 54–58.

3. Although the complaint was filed before the suspension occurred, the investigator later expanded her investigation to include this allegation of discrimination.

4. These allegations—monitoring of telephone calls and failure to process properly Weahkee's earlier complaints—were not raised in the District Court and accordingly are not considered here.

5. Weahkee had filed several other complaints dating from July 1971 which are not at issue here.

had no uniformly applied production standards for field office personnel and that attempts to remove employees for failure to produce at least four cases per month had not been approved where the employee had produced completed work. Further, she remarked that the Albuquerque District Director maintained a production policy which permitted a distortion of production records causing comparisons between investigators to be uneven and unfair.

Addressing the issue of the denial of the transfer to the GS–12 position in the conciliation unit, the investigator pointed out that the decisionmaker, Robles, had not explained the selection criteria used to make the selection. Referring to a good but three-year old evaluation of Weahkee's performance in the conciliation unit as a GS–11, the investigator noted that Weahkee was rated ready for promotion at that time [6] and further that Weahkee had been evaluated more favorably as a conciliator than as an investigator or TAW writer, his more recent assignments.

Regarding the denial of promotion to GS–13 supervisor of the conciliation unit, the investigator referred to the promotion evaluation summary of the eight eligible candidates, set out above, —— of 190 U.S. App.D.C., 1258 of 587 F.2d, and observed that the selectee and Weahkee had been evaluated as equal in the categories of performance, awards, and experience, but that the selectee had a higher rating in potential. Additionally, she noted that the selectee was rated as "Good Promotional Material. Ready to Learn and Perform More Difficult Tasks" whereas Weahkee was rated as having "No Capability for More Difficult Jobs." The investigator considered it a contradiction that the selectee's evaluator rated him ready for promotion but listed his weakest point as a lack of technical knowledge of Title VII. Further, the investigator noted that the District Director Robles had deviated from his long-standing practice of selecting supervisors from among eligible employees of the Albuquerque District Office.

According to the report the District Director had stated during his interview with the investigator that Weahkee was not selected for promotion because (1) he was not performing competently, (2) he had not supervised lower level employees, (3) his attitude was poor, (4) his prior good evaluation as a conciliator was based on a number of settlements which were later found to have been claimed wrongly, and (5) the selectee was already performing as a supervisor. The investigator also mentioned that the selectee had had no prior Title VII background nor conciliation experience when he had been selected for the GS–13 supervisory position in the Los Angeles Office two years earlier.

Concerning the denial of the within grade increase, the investigator stated that the district office production records indicated an average of 36 completed cases per year was adequate for such a pay increase but that the policy was not applied evenly, citing the example of a white woman who received an increase without meeting the 36-case per year minimum.

Finally, as to the 10-day suspension, the investigator asserted that contrary to the District Director's contention, the EEOC compliance manual did not prohibit investigators such as Weahkee from permitting the witnesses to write their own affidavits. Moreover, according to the investigator, the manual showed that the supervisors at Albuquerque were violating the requirements for case consolidation.

The investigator's report did not include any specific recommendation; but under the applicable Civil Service Commission regulations, the report should have been provided to Weahkee and an attempt made to resolve the complaint informally. *See* 5 C.F.R. § 713.216–17. The record indicates that one year after the report was filed, the Regional Director responsible for the Albuquerque Office wrote a reply to the EEOC Director of Equal Employment Opportunity. (Attachment E, Defendant's Memorandum in Opposition to Plaintiff's Motion for

---

6. Weahkee received his GS–12 promotion at the end of the training period in question.

Summary Judgment) The memorandum, styled "Response to Questions and Analysis of Information Regarding Investigation of Complaint of Clarence Weahkee" is a 36-page detailed rebuttal of many of the assertions made by the investigator in her report.

On March 9, 1977 the EEOC Director of Equal Employment Opportunity issued to Weahkee a proposed disposition which substantially reiterated the findings of the Civil Service Commission FEAA, *see infra* at —————— of 190 U.S.App.D.C., at 1261 1263 of 587 F.2d, and proposed that Weahkee be returned to duty. (Exhibit 1, Brief for Appellee Weahkee) This proposed disposition was revoked two weeks later by the Vice-Chairman of the EEOC because the Director of Equal Employment Opportunity had exceeded her authority by proposing the disposition of issues outside equal employment opportunity matters. A promised revised proposed disposition has not issued. (Attachment, Reply Brief for Appellant EEOC)

2. *Performance Rating Panel.* Weahkee appealed his unsatisfactory performance rating to the Chairman of the EEOC who referred the appeal to a Performance Rating Panel comprised of three EEOC employees. The panel, convened December 10, 1975, heard extensive testimony from Robles, Iske, Weahkee, and other employees of the Albuquerque office. The panel found that the evidence sustained the allegation that both the quality and quantity of Weahkee's work were unsatisfactory. Additionally, the panel found that Weahkee's attitude was unsatisfactory, as reflected by his persistent unresponsiveness to apparently reasonable management requests and by his inexplicable resistance to the orderly processing of his work. Therefore, on May 19, 1976, the panel recommended that the unsatisfactory evaluation be upheld by the Vice-Chairman. The Vice-Chairman approved the recommendation. Weahkee then appealed to the Civil Service Commission's Performance Rating Board of Re-

view; this Board consisted of a CSC employee and one designee each by Weahkee and the EEOC. On March 25, 1977 the Board unanimously sustained the unsatisfactory evaluation (Attachment A, Brief for Appellant EEOC)

3. *Civil Service Commission: Federal Employee Appeals Authority (FEAA).* Weahkee appealed his discharge to the FEAA alleging that it was improper and discriminatory. A hearing was held on March 23, 1976 at which Weahkee and his superior testified.[7] On May 6, 1976 the FEAA reversed Weahkee's discharge. The FEAA decision reviewed extensively the reasons cited by the EEOC for discharging Weahkee, see pages —————— of 190 U.S.App.D.C., pages 1258–1259 of 587 F.2d, *supra,* and found that the quality of Weahkee's work had been unsatisfactory in the four cases cited in the notice of removal. However, the FEAA rejected the allegation that Weahkee had failed to participate in the training of lower level employees, because he had never been specifically assigned to do so. Regarding the allegation that Weahkee's attitude toward supervision was unsatisfactory, the FEAA noted that the examples cited had resulted in the 10-day suspension and were therefore unavailable as support for further disciplinary action such as discharge. Other instances of Weahkee's alleged uncooperative attitude were found to be insufficient because they had not been publicized outside his chain of command. Thus, the FEAA concluded that Weahkee must be reinstated because the FEAA considered it unlikely that unsatisfactory performance in the four cases alone would have warranted his discharge.

The FEAA rejected Weahkee's contention that racial discrimination had been a factor in his discharge. The FEAA stated:

In our review of the issue of discrimination we have carefully considered the agency file comprised of some 103 exhibits, the complete record including the transcript and exhibits of the appellant's performance rating appeal which was ac-

---

7. The record of the Performance Rating Panel was also incorporated into the record of the FEAA.

cepted as an exhibit for this record, the transcript of proceedings for the hearing on the instant appeal, and the EEO investigative report comprising some 70 exhibits in two volumes. Reflected therein is a history, encompassing a period of several years, of difficulty between the appellant and supervisory officials of the EEOC in connection with his work performance and his relationship with supervisory personnel. These matters, of course, were not considered in connection with the merits of the removal action inasmuch as the agency's case is limited to those matters specifically charged. All the material, in the record, however has been considered on the issue of discrimination solely on the question of whether or not prohibited considerations of the appellant's race are evidenced therein which might suggest discrimination in the removal action. We have found no evidence supportive of the appellant's allegation in this regard. Rather, this material is consistent with the testimony of Mr. Robles, District Director, that special efforts were made to recruit and bring the appellant into the organization in order to racially balance the work force, and that he proposed the appellant's removal solely for reasons relating to his performance as set out in the notice of proposed removal. We are persuaded by the evidence that the appellant's race was not a factor in the removal action.

J.A. 283–84.

As a result of the FEAA decision, Weahkee was reinstated in the EEOC's Albuquerque District Office.

8. Weahkee began this action on July 2, 1975 before the decision of the FEAA issued, ordering him reinstated as a GS–12.

9. The court rejected the FEAA finding, see page —— of 190 U.S.App.D.C., page 1262 of 587 F.2d, *supra,* that racial discrimination had not been a factor in Weahkee's removal. The court concluded that this finding was not supported by substantial evidence.

10. The court evidently assumed that had Weahkee been promoted to GS–13 in September 1973, he would have received a routine within grade increase after serving in that job for one year. The denial of the within grade increase referred to by the court is distinct from the one

## II.

Weahkee's action in the District Court alleges that the denial of promotions and within grade increase, the 10-day suspension, and the discharge [8] violated his rights under the Fifth Amendment, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, as amended.

On cross motions for summary judgment the District Court held in favor of Weahkee. Relying upon the findings of the EEO investigator and the FEAA, the court found substantial evidence in the record that the EEOC had no justifiable cause for taking the adverse personnel actions against Weahkee. The court further found, on the basis of the EEO investigator's report, that these actions were caused by racial animus directed at Weahkee because he is an American Indian.[9] Specifically, the court held that unlawful discrimination caused the denial of the promotion to GS–13 in September 1973 and the denial of a within grade increase for which he would otherwise have been eligible in September 1974.[10] The court also found discrimination had been a factor in the 10-day suspension and in Weahkee's discharge in the spring of 1975.[11]

The court held that the EEOC had failed to show by clear and convincing evidence that, absent the discrimination, Weahkee would not have received the promotions. *Day v. Mathews,* 174 U.S.App.D.C. 231, 233, 530 F.2d 1083, 1085 (1976). Thus, the court concluded, but for the discrimination Weahkee would have received the promotion and

in December 1973, see page —— of 190 U.S. App.D.C., page 1258 of 587 F.2d, *supra,* which Weahkee cited in his complaint. The December 1973 increase became moot when the court ordered Weahkee promoted to GS–13 retroactive to September 1973.

11. The court dismissed the Fifth Amendment claim to a predetermination hearing. The section 1981 claim was also dismissed. *See Brown v. GSA,* 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Because Weahkee prevailed on other grounds, he had no occasion to appeal these rulings and we express no opinion as to them.

within grade increase and would not have been suspended or removed from employment.

The court ordered Weahkee reinstated in his former job at the grade GS–13 dating from September 1973 with backpay, representing the difference between the GS–12 salary he received and the GS–13 salary he would have received had there been no discrimination, including a within grade increase for GS–13 as of September 1974. The court also ordered backpay as GS–13 for the period of the 10-day suspension.

The EEOC appeals, contending that the District Court erred in granting summary judgment to Weahkee on the basis of the administrative record because the record presents numerous issues of fact material to a finding of discrimination. The EEOC also contends that the court erred in granting Weahkee a promotion and backpay because there is nothing in the record to show that Weahkee was the best qualified candidate for the GS–13 position for which he was not selected.

The question of Weahkee's discharge is now moot because of his subsequent reinstatement by the FEAA as a GS–12 in the Albuquerque Office. Counsel for the EEOC stated at oral argument that the reinstatement included backpay as a GS–12 for the time lost. Thus, this appeal concerns the issues of the allegedly discriminatory denial of promotion and attendant backpay as well as the issue of the backpay for the allegedly discriminatory suspension. Adverse entries of Weahkee's personnel record—the 10-day suspension and the unsatisfactory evaluation—which may have been the result of unlawful discrimination, of course, also remain in issue.

### III.

The question on this appeal is whether the District Court properly resolved the case on the basis of the administrative record. Because we think the court applied an incorrect standard of review of the administrative record, and also because genuine issues of material fact existed precluding summary judgment, we reverse and remand to the District Court for further proceedings.

### A. STANDARD OF REVIEW

It is settled that federal employees are entitled to a *de novo* proceeding in district court upon a complaint of employment discrimination. *Chandler v. Roudebush,* 425 U.S. 840, 864, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976); *Hackley v. Roudebush,* 171 U.S.App.D.C. 376, 381, 520 F.2d 108, 113 (1976). This does not mean that the administrative record which has been developed is to be disregarded, nor does it foreclose the possibility of summary judgment. On the contrary, the district court may consider the administrative record as evidence to be accorded whatever weight the court deems appropriate. Additional testimony, if any, should supplement the administrative record as necessary to enable the court to decide the case. 171 U.S.App.D.C. at 418, 520 F.2d at 150. But the principle which should guide the court's analysis of Title VII cases is that there is to be a fresh determination of the facts and issues by the district court.

In the present case, the parties moved for summary judgment on the basis of the administrative record.[12] Rather than conduct a *de novo* review of that record, however, it appears that the court applied a substantial evidence test. Granting summary judgment, the court ruled:

> Finding that there are no genuine issues as to any facts and that the plaintiff

12. The EEOC avers that it moved for summary judgment only to the extent it argued that Weahkee had failed to exhaust his administrative remedies or to file a timely administrative complaint. Weahkee disagrees. The question is not without doubt, *compare* J.A. 318 *with* J.A. 314–15, but we need not address this point further than to observe that the operative consideration in deciding cross motions for summary judgment is not the wishes of the parties but the absence of a genuine issue of material fact. *National Ass'n of Government Employees v. Campbell,* (D.C.Cir. No. 76–2010 at 8–9, May 9, 1978); *see infra* Part IIIB.

is entitled to judgment as a matter of law, the Court has concluded that the plaintiff was unlawfully discriminated against by reason of his race and denied equal employment opportunities with the defendant EEOC in violation of Title VII of the Civil Rights Act of 1964, *supra.*

There being no legitimate justification for defendant's adverse actions against plaintiff, commencing with a denial of promotional opportunities and culminating in his termination in March 1975, the Court finds that such actions were promoted by discrimination against plaintiff by reason of his race, Native American. This finding is supported by the findings and conclusions of unlawful discrimination against the plaintiff as determined by the EEO investigator.

The findings and conclusions of the Civil Service Commission and the EEO investigator holding that the EEOC had no justifiable cause for the adverse actions taken against the plaintiff are supported by substantial evidence in the record.

(J.A. 388)

Weahkee contends that the substantial evidence test was proper in this case. He argues that *de novo* review is necessary in the ordinary case because the administrative review process is inadequate and limits the ability of administrative personnel to discern and analyze discriminatory acts and practices, see *Hackley v. Roudebush, supra,* 171 U.S.App.D.C. at 417 n.172, 520 F.2d at 149 n.172, but that such considerations are not present where the administrative review process has found discrimination. (Brief for Appellee Weahkee at 18) Thus, the argument goes, the District Court properly reviewed the entire administrative record and concluded that there was substantial evidence to support the finding of the EEO investigator that Weahkee was the victim of racial discrimination.

Weahkee's argument draws its appeal from the sensible proposition that once the administrative process has concluded that discrimination has occurred, the agency ought not be given the opportunity in court to object to its own findings. But the proposition has no application to this case because the administrative process has not found that Weahkee has been the victim of employment discrimination. The clear implication of the investigator's report is that Weahkee was treated adversely because of his race, but this is hardly a final agency decision.

Under the regulations, the report of the investigator is intended to serve as a basis from which the agency and the complainant should attempt an informal resolution of the complaint. 5 C.F.R. § 713.216–17. If an informal resolution is not agreed upon, the agency must propose a disposition of the complaint and notify the complainant of his right to a decision by the head of the agency or his designee, with or without a hearing at the option of the complainant. *Id.* § 713.217(b). If the complainant desires a hearing, the hearing examiner will include the record of the proceeding in the complaint file and recommend a decision to the head of the agency. *Id.* § 713.218(g). The decision of the agency is made by the head of the agency or his designee, based upon the information in the complaint file. *Id.* § 713.221(a). Thus, it appears that the investigator's report, while a part of the complaint file, is in no sense a decision of the agency.

In Weahkee's case this complicated process was never completed. The proposed disposition of the complaint substantially paraphrased the decision of the FEAA, without specifically referring to or adopting the investigator's report. But the proposed disposition was revoked by the Vice-Chairman of the EEOC, see page —— of 190 U.S.App.D.C., page 1261 of 587 F.2d, *supra,* and no revised disposition has yet issued. Whether Weahkee's election to take his complaint to the Civil Service Commission is responsible for the extraordinary delay in the administrative processing of this complaint, or whether some other causes are responsible is not at issue here; the point is that the investigator's report is not an agency decision. We know of no precedent for holding an agency to the prelimi-

nary decision of a hearing examiner much less to the opinion of an investigator who conducts the initial inquiry into a complaint. *Cf.* 5 U.S.C. §§ 704, 706 (1976); *Lorain Journal Co. v. FCC*, 122 U.S.App. D.C. 127, 131, 351 F.2d 824, 828 (1965), *cert. denied*, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966).

Nor does the investigator's report have any of the indicia of an opinion by an independent and impartial decisionmaker rendered after some form of adversary proceedings. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798–99, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Hackley v. Roudebush, supra*, 171 U.S.App.D.C. at 409 & n.136, 520 F.2d at 141 & n.136. On the contrary, it is the report of an investigator who interviewed the individuals involved in the controversy and who attempted to gather information relevant to the determination of the merits of the complaint. The investigator is more like a police officer who impartially investigates a citizen's complaint that a crime has occurred, but who, nevertheless, is charged with ferreting out crime. A police officer's filing a charge does not establish that a crime has been committed by the putative defendant, nor does an investigator's report convict a respondent of discrimination.

The investigator's report is evidence in the record and the District Court may draw from it whatever inferences it deems appropriate; but the court may not abdicate its responsibility and accord the investigator's report controlling weight simply because it finds substantial evidence to support the investigative determination. Such a view works at cross purposes with Congress' intention that the courts conduct *de novo* proceedings in cases of alleged employment discrimination.

The substantial evidence test requires that the court uphold the administrative determination if the record reveals relevant evidence that a reasonable mind might accept as adequate to support the conclusion. *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). "This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] finding from being supported by substantial evidence." *Id.* That the court may disagree with the administrative decisionmaker under such a review is immaterial. But under *de novo* review mandated by Congress it is the court's judgment and not the administrator's that is controlling. The court must carefully review the record and make its own independent judgment of the issues as it does in any civil matter tried to the court.

## B. EXISTENCE OF ISSUES OF MATERIAL FACT

Quite apart from the question of the standard of review of the administrative record is the question whether summary judgment was appropriate in this case. We think that neither side could prevail upon a motion for summary judgment based upon the administrative record.

It is elementary that summary judgment is granted properly only where no material fact is genuinely in dispute and only if the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In this case Weahkee bore the initial burden to present a *prima facie* case of discrimination. The District Court found that he had carried that burden, relying principally on the EEO investigator's report and to some extent upon the FEAA's reversal of Weahkee's discharge. As the summary of the facts, Part I, *supra*, reveals, several of the findings of both were hotly contested.

The EEOC controverted the EEO investigator's report in detail. The Regional Director of the EEOC having authority over the Albuquerque District Office wrote a 36-page memorandum in which he attacked many of the investigator's assertions. (Attachment E, Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment) For example, the investigator asserted that although Weahkee was denied a within grade increase because of production below the 36 case per year mini-

mum, a white woman who had not produced 36 cases received a similar increase. According to the Regional Director's memorandum, at 16, this woman produced 38 cases during the period of time that her within grade increase was measured. Regarding the promotion to GS–13, the investigator stated that the District Director departed from his long-standing policy of selecting supervisors from those eligible in the Albuquerque Office. The memorandum, at 33, denies the existence of any such policy. We do not suggest that these examples establish anything one way or the other; on the contrary, they merely demonstrate that the findings underlying the EEO investigator's report were far from undisputed.

The District Court also discredited, as unsupported by substantial evidence, the FEAA determination that racial animus played no part in the adverse actions taken against Weahkee.[13] This determination was made by the FEAA after a hearing at which Weahkee and his superiors testified. Credibility has an important role in a case such as this, with allegations of discriminatory promotions, and defenses of unsatisfactory performance. Especially where the administrative record reveals contrary determinations of these issues, the court could not accept the findings of the EEO investigator and reject those of the FEAA without hearing any of the witnesses.

■ Moreover, even if we assume that the District Court could properly find on the basis of the administrative record that Weahkee had made out a *prima facie* case of discriminatory treatment at the EEOC, other issues of fact foreclosed summary judgment on the major allegation of the complaint that Weahkee was denied a promotion to GS–13 because of discrimination. For Weahkee to prevail upon this claim, the court would have to find that he would have received this promotion "but for" the discrimination. *Day v. Mathews*, 174 U.S.

App.D.C. 231, 233, 530 F.2d 1083, 1085 (1976); *see Rogers v. Equal Employment Opportunity Comm'n*, 179 U.S.App.D.C. 270, 271, 551 F.2d 456, 457 (1977). The court correctly recognized that the "but for" test applied and that the government bore the burden of proving that Weahkee would not have been promoted had there been no discrimination. *Day v. Mathews, supra*, 174 U.S.App.D.C. at 233, 530 F.2d at 1085. On this issue we think the court overlooked a critical dispute as to the facts. On paper, at least, the selectee appears to be more qualified for the promotion than Weahkee. *See* page —— of 190 U.S.App. D.C., page 1260 of 587 F.2d, *supra*. The selectee came from the Los Angeles district office, however, and the EEO investigator asserted that Robles had a policy of choosing supervisors from among the eligible candidates in the Albuquerque Office. This assertion was denied by the Regional Director's memorandum reply to the investigator's report. Moreover, even if this policy existed, it is not apparent that Weahkee would have been chosen next after the selectee. *See* p. —— of 190 U.S.App.D.C., p. 1258 of 587 F.2d, *supra*. Therefore we think that, quite apart from the disputed issue of discrimination, the District Court erred in resolving the "but for" test against the government without hearing any testimony from the parties most directly involved. As we said in the *Day* case, declining the invitation of the parties to apply the "but for" test on appeal:

> This is certainly not a case where the credentials of one applicant so far outshine the credentials of the competitors that the result is beyond doubt. Indeed, the District Court's judgment on the credibility of the witnesses could be determinative.

174 U.S.App.D.C. at 233, 530 F.2d at 1085.

The same considerations which led the court to remand the *Day* case militate against summary judgment in the present case.

---

**13.** Weahkee contends here that the issue of discriminatory motive for his discharge was not before the FEAA. However, the FEAA decision as well as Weahkee's correspondence

with the EEOC on this point indicate that Weahkee elected to include an allegation of discrimination in his appeal to the FEAA.

That the government bears the burden of demonstrating by clear and convincing evidence that Weahkee would not have been promoted in the absence of discrimination, and that the government cannot carry this burden on the basis of the administrative record alone, in no way weakens the conclusion that summary judgment was improper here. The live testimony of Weahkee's supervisors who evaluated him and of Robles who made the promotion decision are too critical to say that the government cannot, as a matter of law, carry its burden. As we said in the *Hackley* case:

> [I]n many promotional situations—particularly at higher GS levels where the ultimate decision is committed to managerial discretion with few or no objective criteria—the crucial factual issue of whether the supervisor's actual motives had racial overtones will be material, and if disputed will preclude grant of summary judgment; instead, the District Judge would have to hear testimony to enable him to evaluate the credibility of the supervisors involved.

171 U.S.App.D.C. at 425, 520 F.2d at 157.

We conclude that the case must be remanded to the District Court. The court failed to conduct a *de novo* review of the administrative record. Moreover, the existence of genuine issues of material fact precluded summary judgment.

## IV. CONCLUSION

In summary, we hold that the District Court erred in applying a substantial evidence standard of review to the administrative record. A *de novo* proceeding is necessary in all Title VII cases. In some cases, the administrative record will be so full and clear and the issues such that a *de novo* review of the record will be all that is required and summary judgment will be available; but when as in this case the material facts are in dispute and issues of credibility are involved, the court will require additional testimony to supplement the administrative record. Disputed questions of fact are not to be resolved on motion for summary judgment. Accordingly the judgment of the District Court is

*Reversed.*